IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


LINDA CAROL SALLEY                                                        PLAINTIFF


        v.                              CIVIL NO. 14-5134


CAROLYN W. COLVIN, Commissioner
Social Security Administration                                          DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

        Plaintiff, Linda Carol Salley, brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying her claim for supplemental security income (SSI) benefits under the

provisions of Title XVI of the Social Security Act (Act).  In this judicial review, the Court must

determine whether there is substantial evidence in the administrative record to support the

Commissioner's decision.  See 42 U.S.C. § 405(g).

**I.      Procedural Background:**

        Plaintiff protectively filed her current application for SSI on June 14, 2012, alleging an

inability to work due to high blood pressure, severe headaches, carpal tunnel syndrome, muscle

spasms, and knee problems.  (Tr.15, 74, 168).  An administrative hearing was held on February

7, 2013, at which Plaintiff appeared with counsel and testified. (Tr. 25-56).

        By written decision dated April 12, 2013, the ALJ found that during the relevant time

period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 13).

Specifically, the ALJ found Plaintiff had the following severe impairments: hypertension,

bilateral carpal tunnel syndrome, and status post gunshot would to the left knee status post open

reduction and internal fixation. However, after reviewing all of the evidence presented, the ALJ

determined that Plaintiff's impairments did not meet or equal the level of severity of any

impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No.

4. (Tr. 14). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 416.967(b) except the claimant is
> unable to perform jobs that require repetitive fingering and handling (but she is
> able to perform these actions on a frequent basis).

(Tr. 15). With the help of a vocational expert, the ALJ determined Plaintiff could perform her

past relevant work as a housekeeper and a cashier. (Tr. 19).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which

denied that request on March 13, 2014. (Tr. 1-5). Subsequently, Plaintiff filed this action. (Doc.

1). Both parties have filed appeal briefs, and the case is before the undersigned for report and

recommendation. (Doc. 13; Doc. 14).

The Court has reviewed the entire transcript. The complete set of facts and arguments

are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.    Evidence Presented:**

At the time of the administrative hearing held on February 7, 2013, Plaintiff was forty-

seven years of age, and had obtained a ninth grade education. (Tr. 31 ). Plaintiff's past relevant

work consists of work as a housekeeper and a cashier. (Tr. 52 ).

The pertinent medical evidence in this case reflects the following. On June 13, 2012,

Plaintiff was seen at FirstCare South by Benjamin P. Sexton PA-C. (Tr. 367-368). Plaintiff

reported that while carrying out a bag of trash, a broken light bulb broke through the bag, and

-2-

cut the skin over her calf.  Plaintiff was noted to have recently moved from Mississippi, and requested a refill for her blood pressure medication.  With respect to Plaintiff's hypertension, Plaintiff denied chest pain, a headache, or irregular heartbeat/palpitations.  Plaintiff was noted to have no fever, fatigue or night sweats.  Plaintiff reported no joint pain or swelling, no weakness, and a normal gait. Plaintiff's wound was sutured, and her blood pressure medication was renewed.  Plaintiff's hypertension was noted as under sub-optimal control.

On June 22, 2012, Plaintiff was seen at FirstCare South by Dr. Leah M. Layer.  (Tr. 365-366).  Plaintiff was seen for a follow-up for her wound care and for her hypertension.  Plaintiff reported that her hypertension was elevated.   Treatment notes indicated Plaintiff was asymptomatic, and that she denied chest pain, shortness of breath, or blurry vision.  Plaintiff reported occasional headaches.  Plaintiff indicated that she smoked one-fourth of a package of cigarettes a day.  Dr. Layer recommended waiting another three or four days before removing the sutures from Plaintiff's right calf.  Plaintiff's hypertension medication was also changed.

On June 26, 2012, Plaintiff was seen at FirstCare South by Dr. Layer.  (Tr. 363-364).  Treatment notes indicated Plaintiff was in for a suture removal from her right calf.  Plaintiff reported that she smoked one-fourth of a package of cigarettes a day.

On July 28, 2012, Plaintiff entered the Washington Regional Medical Center emergency room with complaints of pain in her right hip and right shoulder.  (Tr. 370-379).  Plaintiff described the pain as shooting and sharp and exacerbated by walking.  Plaintiff reported that she smoked one-half of a package of cigarettes a day.  Upon examination, Plaintiff's blood pressure was noted as hypertensive.  Plaintiff had a regular heart rate and rhythm.  Plaintiff's back was noted as normal, and her upper extremities were normal to inspection with a normal range of

motion.  Plaintiff exhibited tenderness in the right anterior hip, and a decreased range of motion due to pain. A x-ray of Plaintiff's pelvis and hip revealed no acute fracture or dislocation.  (Tr. 379).  Plaintiff was diagnosed with hip strain.

On July 28, 2012, Dr. Robert Redd opined that Plaintiff's physical impairments were considered non-severe.  (Tr. 79-80).   On October 8, 2012, Dr. Valeria Malak affirmed Dr. Redd's assessment.  (Tr. 91-92).

On July 30, 2012, Plaintiff was seen at FirstCare South by Dr. Layer.  (Tr. 402).  Plaintiff complained of buzzing/noise in her ears, chest pain, a headache, nausea and vomiting, and shortness of breath.  Plaintiff reported she was taking all medications except for the diltiazem because she had lost her prescription.  Plaintiff reported that she smoked one-fourth of a package of cigarettes per day.  Treatment notes indicate that Plaintiff's blood pressure had been elevated for the past several days, otherwise it had been better.  Plaintiff was given medication at the clinic and her blood pressure decreased.  Plaintiff's blood pressure medication was changed.

On October 17, 2012, Plaintiff underwent a mental diagnostic evaluation performed by Dr. Terry L. Efird.  (Tr. 386-390).  Plaintiff reported that she applied for disability due to carpal tunnel in both hands.  Plaintiff also reported knee problems, and that she had been depressed recently.  Plaintiff reported sleep problems, noting that she averaged about five hours of sleep a night.  Dr. Efird noted that Plaintiff endorsed the ability to perform basic self-care independently.  Plaintiff indicated that her ability to perform household chores adequately was impaired due to her inability to lift heavy objects.  Plaintiff reported that she cleaned a  house one day a week for an attorney.  Dr. Efird noted Plaintiff wore wrist braces on both wrists.  Plaintiff's mood was noted as generally normal, and there were no remarkable indications of acute

-4-

emotional distress. Dr. Efird diagnosed Plaintiff with a depressive disorder, NOS, and an antisocial personality disorder. Dr. Efird assessed Plaintiff's global assessment of functioning (GAF) score to be between 60-70.

With regard to adaptive functioning, Dr. Efird noted Plaintiff endorsed the ability to drive familiar routes, the ability to shop independently, and the ability to handle personal finances. Plaintiff also endorsed the ability to perform most activities of daily living, but noted difficulty with lifting heavy items. Plaintiff reported she played cards with a group of people at her brother's house on the weekends. Dr. Efird opined that Plaintiff had the ability to perform basic cognitive tasks required for basic work-like activities, but opined Plaintiff would have difficulty with complex types of cognitive tasks. Dr. Efird noted that Plaintiff appeared to be able to track and respond adequately, and that she generally completed most tasks during the evaluation. Plaintiff was noted to have the mental capacity to persist with tasks if desired. Plaintiff was noted to have the ability to perform basic work-like tasks within a reasonable time frame.

On October 18, 2012, Dr. Sheri L. Simon reviewed the medical record and opined that Plaintiff did not have a severe mental impairment. (Tr. 93).

On October 30, 2012, Plaintiff was seen at FirstCare South. (Tr. 400-401). Plaintiff reported that her blood pressure had been running high, and that she had been experiencing headaches and tiredness. Plaintiff denied blood in her urine, chest pain, or sweating. Plaintiff also complained of heartburn symptoms. Plaintiff reported a bruise caused by a blood vessel in her right leg, and wrist pain. Dr. Layer changed Plaintiff's blood pressure medication and recommended the continued use of wrist braces.

AO72A
(Rev. 8/82)

On November 5, 2012, Plaintiff was seen at FirstCare South due to her hypertension.  (Tr. 398).  Plaintiff complained of buzzing/noise in her ears, a headache, nausea and vomiting, and nosebleeds.  Plaintiff reported experiencing these symptoms for three days.  Plaintiff also reported blood in her stool, diarrhea, weakness, and low blood pressure since her medications were changed.  No unusual anxiety or evidence of depression was observed.  Dr. Layer noted that while Plaintiff's hypertension had improved, she could not determine if it was the spironolactone or a GI virus that was causing Plaintiff's issues.  Dr. Layer indicated that Plaintiff would hold her spironolactone for three days, and if Plaintiff's diarrhea stopped and then started again, a new medication might be tried.

On November 13, 2012, Plaintiff was seen at FirstCare South due to her hypertension and sores on her nose that caused pain.  (Tr. 396-397).  Plaintiff reported experiencing headaches and shortness of breath.  Plaintiff was noted to be taking her medication as prescribed.  Upon examination, Plaintiff was in no apparent distress.  There was no unusual activity or evidence of depression indicated.  Dr. Layer added Tekturna as a medication for Plaintiff's hypertension.

On December 10, 2012, Plaintiff was seen at FirstCare South due to chest pain, sweating, and a headache.  (Tr. 394).  Plaintiff also reported an episode of feeling dizzy and having some shaking, so she wanted her blood sugar checked.  Dr. Layer noted that Plaintiff's hypertension was not under control, and that several medications had been tried.  Dr. Layer recommended a referral to cardiology.

On December 28, 2012, Plaintiff was seen by Dr. Geetha Ramaswamy upon referral by Dr. Layer.  (Tr. 407).  Plaintiff complained of chest discomfort and dyspnea.  Plaintiff denied a history of PND (paroxysmal nocturnal dyspnea), orthopnea, leg pain, swelling in the extremities,

-6-

muscle cramps or fatigue.  Dr. Ramaswamy noted Plaintiff was being seen for management of her difficult to control hypertension.  Dr. Ramaswamy noted that he had reviewed Dr. Layer's progress notes, and that he did not see any adverse reaction to any medications except for clonidine.  Plaintiff was noted to smoke one-half of a package of cigarettes a day.  Plaintiff denied fatigue, headaches, muscle pain, anxiety, depression, or difficulty sleeping.  (Tr. 408).  Upon examination, Plaintiff was noted to have normal breath sounds and a heart with a regular rate and rhythm.  Plaintiff exhibited a normal gait and was able to stand without difficulty.  Plaintiff's judgment and insight were intact, and her mood was normal.  Plaintiff was diagnosed with chest discomfort and hypertension, benign essential.  Dr. Ramaswamy indicated that he would like to add an ARB (angiotensin receptor blocker), but he added hydralazine because Plaintiff could only afford the four dollar medications. Dr. Ramaswamy also ordered a renal artery ultrasound, as well as, an echocardiogram and a persantine myoview.   Plaintiff was advised to stop smoking.

On January 3, 2013, Plaintiff underwent a persantine myoview stress test which was normal. (Tr. 412-413).

On January 4, 2013, Plaintiff underwent an echocardiogram and a cardiac ultrasound that revealed moderate aortic insufficiency.  (Tr. 404).  Plaintiff also underwent a renal sonogram which revealed no evidence of hydronephrosis, and no suggestion of renal artery stenosis.  (Tr. 415-416).

**III.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  <u>Ramirez v. Barnhart</u>, 292 F.3d 576, 583 (8th Cir.

-7-

2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or

AO72A
(Rev. 8/82)

mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal

an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

relevant work; and, (5) whether the claimant is able to perform other work in the national

economy given her age, education, and experience.  See 20 C.F.R. § 416.920.  Only if the final

stage is reached does the fact finder consider the Plaintiff's age, education, and work experience

in light of her residual functional capacity.  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42

(8th Cir. 1982); 20 C.F.R. § 416.920.

## III.   Discussion:

Plaintiff contends that the ALJ erred in concluding that the Plaintiff was not disabled

because: 1) the ALJ failed to fully and fairly develop the record; and 2) the ALJ erred in

determining Plaintiff's RFC.

### A.  Full and Fair Development of the Record:

Plaintiff argues that the record was not fully and fairly developed because the ALJ's

opinion was based on evidence, including medical records from a prior application of benefits,

which was prior to the relevant time period for the application now before the Court.

The ALJ has a duty to fully and fairly develop the record.  See Frankl v. Shalala, 47 F.3d

935, 938 (8th Cir.1995).  The ALJ's duty to fully and fairly develop the record is independent of

Plaintiff's burden to press her case.  Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir.2010).  The

ALJ, however, is not required to function as Plaintiff's substitute counsel, but only to develop

a reasonably complete record.  "Reversal due to failure to develop the record is only warranted

where such failure is unfair or prejudicial."  Shannon v. Chater, 54 F.3d 484, 488 (8th Cir.1995).

"While an ALJ does have a duty to develop the record, this duty is not never-ending and an ALJ

is not required to disprove every possible impairment." <u>McCoy v. Astrue</u>, 648 F.3d 605, 612 (8th Cir.2011).

In this case, the record consists of a August of 2012 consultative mental diagnostic examination report completed by Dr. Efird; the assessments of three non-examining medical consultants, Drs. Robert Redd, Valeria Malak, and Sheri L. Simon; the 2012 treatment records by Dr. Leahy; the examination of Dr. Ramaswamy and the resulting test findings; and other medical records which include a consultative examination, performed by Dr. Paul Byers in August of 2010. (Tr. 300).

Plaintiff argues that Dr. Byers examination was not performed during the relevant time period, and that Dr. Byers did not have Plaintiff's most recent medical records, specifically the records related to Plaintiff's hypertension, therefore, the ALJ improperly relied on Dr. Byer's examination findings. The Court finds that the ALJ's use of Dr. Byer's examination notes when determining Plaintiff's RFC was proper. <u>See</u> <u>Cox v. Barnhart</u>, 471 F.3d 902, 907 (8th Cir.2006) ("Evidence from outside the insured period can be used in 'helping to elucidate a medical condition during the time for which benefits might be rewarded.' ")(quoting <u>Pyland v. Apfel</u>, 149 F.3d 873, 877 (8th Cir.1998)).  Plaintiff did not allege that her only impairment was her hypertension. The physical examination of Plaintiff by Dr. Byer's addressed other physical impairments, and the subsequent medical evidence does not suggest a change in her functioning with respect to Plaintiff's carpal tunnel syndrome and knee impairments.  With respect to Plaintiff's hypertension, Dr. Ramaswamy's examination notes, as well as the results from numerous tests, were before the ALJ when he determined Plaintiff's RFC.

-10-

Plaintiff also argues that the ALJ should have contacted her treating physician or ordered a current consultative examination.  A RFC assessment from a treating physician, although helpful, is not required. See Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir.2007)(the medical evidence, State agency physician opinions, and claimant's own testimony were sufficient to assess residual functional capacity); Stormo v. Barnhart, 377 F.3d 801, 807–08 (8th Cir.2004)(medical evidence, State agency physicians' assessments, and claimant's reported activities of daily living supported residual functional capacity assessment).

With respect to ordering a consultative examination, an ALJ is only required to order medical examinations and tests where the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled.  Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir.1994); 20 C.F.R. § 416.919a(b), Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir.2005) ("Although that duty [to fully develop the record] may include re-contacting a treating physician for clarification of an opinion, that duty arises only if a crucial issue is undeveloped."). After reviewing the entire record the Court finds the record before the ALJ contained the evidence required to make a full and informed decision regarding Plaintiff's capabilities during the relevant time period.  Accordingly, the undersigned finds the ALJ fully and fairly developed the record.

**B.      Subjective Complaints and Credibility Analysis:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional

-11-

restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards, 314 F.3d at 966.

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors.  A review of the record revealed that in October of 2012, Plaintiff reported that she was able to perform basic self-care tasks independently; that she could perform household chores, but had problems with lifting heavy objects; and that she cleaned a house for a private individual one day a week.  (Tr. 386-390).  Plaintiff also reported that she was able to play cards with a group of people at her brother's house on weekends.  Furthermore, Plaintiff testified at the February 7, 2013, administrative hearing, that she was still cleaning a house for a private individual up through November of 2012, and that she sometimes went to the gym to use the treadmill.  (Tr. 34-35, 39).

With respect to Plaintiff's hypertension and associated symptoms, the ALJ found that Plaintiff experienced some difficulty in controlling her blood pressure with prescribed medication, but the record as a whole did not support the level of limitation claimed by Plaintiff.  In reaching this determination, the ALJ noted that the cardiology work-up performed by Dr. Ramaswamy resulted in a diagnosis of benign essential hypertension and chest discomfort, and that the recommended testing revealed normal findings with the exception of an echocardiogram that revealed moderate aortic insufficiency. In addressing Plaintiff's hypertension, the ALJ pointed out that while Plaintiff's doctors recommended that she stop smoking, the record reveals

-12-

that Plaintiff continued to smoke throughout the relevant time period.  Brown v. Barnhart, 390 F.3d 535, 540-541 (8th Cir. 2004)(citations omitted)("Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits."). After reviewing the record as a whole, the Court finds substantial evidence to support the ALJ's determination that Plaintiff's hypertension is not disabling.

With respect to Plaintiff's alleged knee pain and carpal tunnel syndrome, the record fails to show that she sought ongoing and consistent treatment for these impairments.  The record revealed that in June of 2012, Plaintiff reported no joint pain or swelling, no weakness, and a normal gait.  (Tr. 367).  When Plaintiff was seen by Dr. Ramaswamy in December of 2012, Plaintiff denied experiencing leg pain, swelling in the extremities, muscle cramps or fatigue. (Tr. 407).  After reviewing the record, the Court finds substantial evidence to support the ALJ's determination that Plaintiff's knee and carpal tunnel syndrome are not disabling impairments.

Therefore, although it is clear that Plaintiff suffers with some degree of pain, she has not established that she is unable to engage in any gainful activity.  See Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability).  Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

**C.    The ALJ's RFC Determination:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v.

-13-

AO72A
(Rev. 8/82)

Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain

are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of

Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a

medical question."  Lauer v. Apfel,  245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's

determination concerning a claimant's RFC must be supported by medical evidence that

addresses the claimant's ability to function in the workplace.  Lewis v. Barnhart, 353 F.3d 642,

646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's

limitations and to determine how those limitations affect his RFC."  Id.

        In the present case, the ALJ considered the medical assessments of examining and non-

examining agency medical consultants, Plaintiff's subjective complaints, and her medical records

when he determined Plaintiff could perform light work with limitations.  The Court finds, after

reviewing the record as a whole, that Plaintiff's argument is without merit, and there was

sufficient evidence for the ALJ to make an informed decision.  Plaintiff's capacity to perform

light work with limitations is also supported by the fact that the medical evidence does not

indicate that Plaintiff's examining physicians placed restrictions on her activities that would

preclude performing the RFC determined.  See Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir.

1999) (lack of physician-imposed restrictions militates against a finding of total disability).

Accordingly, the Court finds there is substantial evidence of record to support the ALJ's RFC

findings.

        **D.     Past Relevant Work:**

        Plaintiff has the initial burden of proving that she suffers from a medically determinable

impairment which precludes the performance of past work.  Kirby v. Sullivan, 923 F.2d 1323,

1326 (8th Cir. 1991). Only after the claimant establishes that a disability precludes performance of past relevant work will the burden shift to the Commissioner to prove that the claimant can perform other work. Pickner v. Sullivan, 985 F.2d 401, 403 (8th Cir. 1993).

According to the Commissioner's interpretation of past relevant work, a claimant will not be found to be disabled if she retains the RFC to perform:

> 1. The actual functional demands and job duties of a particular past relevant job; *or*

> 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

20 C.F.R. §§ 404.1520(e); S.S.R. 82-61 (1982); Martin v. Sullivan, 901 F.2d 650, 653 (8th Cir. 1990)(expressly approving the two part test from S.S.R. 82-61).

The Court notes in this case the ALJ relied upon the testimony of a vocational expert, who after listening to the ALJ's proposed hypothetical question which included the limitations addressed in the RFC determination discussed above, testified that the hypothetical individual would be able to perform Plaintiff's past relevant work. See Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("The testimony of a vocational expert is relevant at steps four and five of the Commissioner's sequential analysis, when the question becomes whether a claimant with a severe impairment has the residual functional capacity to do past relevant work or other work") (citations omitted). Accordingly, the Court finds substantial evidence to support the ALJ's finding that Plaintiff could perform her past relevant work as a housekeeper and a cashier.

-15-

**IV.    Conclusion:**

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 23rd day of July, 2015.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-16-